UNITED STATES DISTRICT COURT NORTHERN
DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17 CV 58 |
| ) | |
| HOWARD WESLEY COTTERMAN, ) | Hon. John J. Tharp, Jr. |
| ) | |
| Defendant. ) | |

### DEFENDANT'S RIPOSTE TO JANE DOE'S OPPOSITION TO DISMISSAL/TRANSFER.

Howard Wesley Cotterman ("Defendant"), by his undersigned attorney, submits this filing in response to the plaintiff's relief-opposition(s). Defendant maintains that the unique facts and circumstances of this litigation warrant dismissal or transfer.

1. Rather than reproduce that which is set forth in defendant's 6/19/17 motion, defendant moves that the court permit defendant to incorporate-by-reference ¶s 1-12 of his 6/19/17 motion, as though those paragraphs were fully reproduced within the contours of this filing.

2. **Synopsis:** Notwithstanding plaintiff's opposition filing, certain facts remain, *sans* dispute. Defendant is 77 years of age and immured in federal custody at an FCI facility in Sheridan, Oregon. His immurement is set to expire during September 2038 (assuming defendant lives until he is about 99 years old). Thus, defendant is serving the functional equivalent of [a] *de facto* life sentence.[1] Further, before his 2007 federal child pornography arrest, he and his wife had lived for a score or more of years in Truckee, California. *Cf.* Plaintiff's 7/6/17 response at p. 7, n. 1.

---

[1] Circuit Judge Posner's dissenting opinion in Kelly v. Brown, 851 F.3d 686, 688 (7th Cir. 2017), notes that according to the Michigan ACLU, the average life expectancy of a white male inmate sentenced to life in prison is 58 years.

Defendant was charged with multiple counts of child pornography in the U.S. District Court, District of Arizona (Tucson Division) under 07 CR 01207-RCC-CRP-1. Defendant was not enlarged on bond and has been in custody some 10-years. During the summer of 2014, defendant, represented by counsel, was convicted of multiple computer related child pornography offenses following what was virtually a "stipulated" bench trial. His direct appeal was for naught. Importantly, since the fall of 2016, defendant appears as the petitioner in Cotterman v. U.S., 4: 16-cv-00667. That docket number reflects defendant's petition pursuant to 28 U.S.C. § 2255 (filed on 10/28/16). In the ensemble, defendant's § 2255 asserts that he is entitled to trial anew because he was deprived of effective assistance of counsel. His 2255 contentions include, *inter alia*, that because his retained trial counsel "stipulated" to almost every fact that the government was required to prove in order to convict defendant – he was deprived of effective assistance of counsel. Notably, the plaintiff at bar relies on the content of those evidentiary stipulations as an integral part of her complaint and 7/6/17 filing in opposition to dismissal/transfer. [2]

---

[2] On 5/30/17, the parties were before this Court. As undersigned counsel recalls, in response to queries from the court, plaintiff's counsel candidly observed that she was relying, at least in part, on the evidence presented during defendant's 2014 criminal/bench trial. Again, with the hazard of recollection, this Court's comments included references to potential collateral estoppel issues.

Within the fabric of defendant's § 2255 petition and exhibits in 16 cv 667, defendant avows he was deprived of effective assistance of trial counsel because, *inter alia*, his trial lawyer directed that he execute a series of evidentiary stipulations because it would [be of] benefit to defendant. The government has twice successfully moved for additional time to respond to defendant's 2255 (currently due on 9/1/17). Were the Arizona federal court to grant § 2255 relief, defendant's 2014 child porno convictions would be for naught. In that event, the "stipulated evidence" relied upon within the contours of this collateral civil proceeding would be undermined to the point where that stipulated evidence would be rendered inadmissible.

Although defendant maintains that his antecedent motions (dismiss or transfer) should be allowed, in any event this Court has the discretion to reject plaintiff's reliance on the "stipulated evidence" presented by the government during defendant's criminal-bench trial. *Cf*., Graefenhain et al v. Pabst Brewing Co., 870 F.2d 1198, 1206 (7th Cir. 1989) ([T]herefore, once made, a stipulation is binding unless relief from the stipulation is necessary to prevent a "manifest injustice" or the stipulation was entered into through inadvertence or based on an erroneous view of the facts or law.) (supporting citations omitted, quotation marks in original).

Defendant asseverates that permitting the admission or reliance on defendant's 2014 "evidentiary stipulations" rises to the level of "manifest injustice."

♦ **Must Damages be Imposed in the Sum of at Least $150,000?**: At p. 5 of plaintiff's 7/6/17 filing in opposition, it cites 18 U.S.C. § 2255 for a variety of propositions, including [that] a child porno personal injury victim must receive damages "of no less than $150,000 in value." However, in Justice Thomas' majority opinion in Manrique v. U.S., --- U.S. ---, 137 S.Ct. 1266 (2017), the Court affirmed a child porno restitution order in the sum of $4,500 which was imposed following that defendant's guilty plea in accordance with 18 U.S.C. §2259(a), (b)(2). Thus, defendant reasonably questions whether the plaintiff correctly asserts that she must receive at least $150,000 as damages in this matter. Defendant suggests that very recent U.S. Supreme Court precedent holds that restitution damages for child porno victims can be as little as $4,500.

3. Defendant contends that dismissal should obtain because maintaining plaintiff's lawsuit clearly "offend[s] traditional notions of fair play and substantial justice," Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014) (citing International Shoe v. Washington, 326 U.S. 310, 316 and Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Justice Thomas, writing for the full Walden Court, articulated the Due Process protections afforded the litigants such as defendant at bar, explaining:

> Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant – not the convenience of plaintiffs or third parties. 134 S.Ct. at 1122 (citation omitted).

Justice Thomas continued the Walden opinion, again referring to due process:

> Put simply, however significant the plaintiff's contacts with the forum State may be, those contacts cannot be "decisive in determining whether the defendant's due process rights are violated." ***. "Second, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, *not the defendant's contacts with persons who reside there*." Id. at 1122.

134 S.Ct. at 1122 (quotation marks in original; citation omitted; emph. added).

Importantly, the Walden Court also explained:

> As previously noted, Calder made clear that mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

Walden, 134 S.Ct. at 1125.

In Kulko v. Superior Court of California, 98 S.Ct. 1690 (1978), the Court held that Ezra Kulko could not be "haled" into a California trial court based on a child support dispute with his former spouse. In part, the Kulko majority explained:

> The Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants. * * *. Like any standard that requires a determination of "reasonableness," the "minimum contacts" test of *International Shoe is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.* Hanson v. Denckla, 357 U.S. 235, 246, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283 (1958). We recognize that this determination is one in which few answers will be written "in black and white. The greys are dominant and even among them the shades are innumerable."

Kulko, 98 S.Ct. at 1696, 1697 (quotation marks in original, citations omitted).

4. Established precedent confirms that defendant has Due Process guarantees including not being "haled" into Illinois in connection with the litigation at hand.[3] The U.S. Supreme Court, in

---

[3] In Kulko v. Superior Court, *ante*, the Court briefly discussed modern transportation and communication which, under other circumstances, may have played some role in the issues at bar. Kulko, 98 S.Ct. at 1701 (… increasing nationalization of commerce … [accompanied by] modern transportation and communication [that] has made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity). Kulko, 98 S.Ct. at 1701. (bracketed inserts in original, quotation marks omitted). Defendant's point is simply that as a federally-immured defendant, he has little access to modern transportation and communication. Hence, additional [due process] considerations must be cogently considered concerning the dismissal/transfer of this litigation.

4

addition to the authorities partially reproduced or cited in defendant's antecedent dismissal/transfer filing, maintains that Chief Justice Burger's classic due process opinion in Morrissey v. Brewer, 408 U.S. 471 (1972), fully supports dismissal or transfer of the case at hand:

> Once it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. '[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' * * *. To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.

Morrissey, 408 U.S. at 481(citation omitted, quotation marks in original).

    WHEREFORE, Defendant, Howard Wesley Cotterman, respectfully urges this Court to dismiss the instant matter for want of personal jurisdiction, or for such other or further relief [transferring litigation to Arizona or Oregon] as this Court deems appropriate. Defendant also requests that this Court permit defendant to incorporation-by-reference (thus avoiding needless repetition) ¶s 1-12 of his 6/9/17 dismissal et al filing.

                                  Respectfully Submitted,
                                  Defendant
                                  HOWARD WESLEY COTTERMAN

Allan A. Ackerman                      By:     /S/ Allan A. Ackerman_____
ALLAN A. ACKERMAN P.C.                     ALLAN A. ACKERMAN, Attorney for Defendant
19 South LaSalle Street
Suite 502
Chicago, IL 60603
T: (312) 332-2891
F: (312) 750-1595
profaaa@aol.com