**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 58 |
| | ) | |
| HOWARD WESLEY COTTERMAN, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jane Doe is a woman who, according to the allegations in the complaint, was sexually abused as a young girl by her paternal grandfather, Defendant Howard Cotterman. In 2014, Cotterman was convicted in federal court of producing, possessing, and transporting child pornography, some of which allegedly depicted Doe. Now that Cotterman's criminal proceedings have concluded, Doe brings a civil action for damages against him under federal and state law to recover for injuries she suffered as a result of his abuse. Two motions currently are before the Court. In the first motion, Cotterman seeks to dismiss the complaint on personal jurisdiction and statute of limitations grounds or, in the alternative, to transfer this case to Oregon, where he is currently incarcerated. The second motion, filed by Doe, seeks to streamline litigation on the federal claims through the use of collateral estoppel. Having reviewed the parties' submissions, the Court denies Cotterman's motion to dismiss, and grants in part and denies in part Doe's motion for collateral estoppel.

## BACKGROUND

The allegations in this case are straightforward but disturbing.[1] When Doe was a child, Cotterman frequently traveled to Illinois to visit her and her family. (Compl. ¶ 9, ECF No. 1.) Often during his visits, Cotterman persuaded Doe's mother to let Doe stay with him overnight at a hotel in Schaumburg or the surrounding area. (*Id.* ¶ 10.) At those hotels, when Doe was between the ages of four and eight (that is, between 2000 and 2004), Cotterman sexually abused her. (*Id.* ¶ 11.) Cotterman also photographed and filmed that abuse; he took and kept hundreds of pictures and videos depicting his molestation of his granddaughter. (*Id.*) Cotterman's abuse of Doe took place in other locations across the United States as well, including in California, where Cotterman resided at the time, and Indiana. (*Id.* ¶¶ 8, 12.)

Several years later, in June 2007, Cotterman was charged with a host of offenses related to child pornography. (*Id.* ¶ 13.) The pornography was found on Cotterman's laptop after it was seized during a search at a United States-Mexico border crossing site in Arizona.[2] Cotterman fled the country before he could be arrested but was later apprehended in Australia and extradited to the United States. (*Id.* ¶ 15.) He subsequently was prosecuted in the United States District Court for the District of Arizona. (*Id.* ¶ 13.) Following litigation of a motion to suppress that took several years to resolve, Cotterman went to trial in 2014. (*Id.* ¶¶ 16-17.) After a two-day bench trial, Cotterman was convicted of producing, transporting, and possessing child pornography in violation of 28 U.S.C. §§ 2251 and 2252. (*Id.* ¶ 18.) He was later sentenced to 35 years in prison and lifetime supervised release. (*Id.* ¶ 19.) The district court, however, did not

---

[1] For purposes of Cotterman's motion to dismiss, the Court must accept as true the allegations in Doe's complaint. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (Rule 12(b)(6)); *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009) (citations omitted) (Rule 12(b)(2)).

[2] For a more detailed account of the seizure, as well as the events leading to Cotterman's arrest and prosecution, see *United States v. Cotterman*, 709 F.3d 952, 957-59 (9th Cir. 2013).

include a restitution judgment for Doe or any of other victims of Cotterman's crimes. (*Id.* ¶ 20.) Cotterman appealed the judgment, but it was affirmed by the Ninth Circuit in November 2015. *United States v. Cotterman*, 619 F. App'x 654, 655 (9th Cir. 2015).

Following Cotterman's unsuccessful appeal, Doe filed suit in this Court asserting four causes of action. The first two counts assert civil remedies under federal statutes that provide redress to persons who were sexually exploited as children. Doe seeks recovery under those statues as result of being featured in the pornography for which Cotterman was convicted. (*Id.* ¶¶ 27-33.) Doe also asserts state law claims for battery and intentional infliction of emotional distress (IIED) stemming from Cotterman's alleged sexual abuse of her in Illinois. (*Id.* ¶¶ 34-46.)

In June 2017, Cotterman moved to dismiss the complaint, arguing that the Court lacks personal jurisdiction over Doe's two federal claims and that the two state law claims are barred under Illinois' sexual abuse statute of limitations. (Def. Mot. to Dismiss ¶¶ 7-10, ECF No. 22.) The motion also seeks to transfer this litigation to the United States District Court for the District Oregon under the doctrine of *forum non conveniens*, if the Court declines to dismiss Doe's claims. (*Id.* ¶¶ 11-12.) While that motion was pending, Doe filed a motion for collateral estoppel in August 2017, arguing that Cotterman's pornography convictions conclusively resolve the issue of his liability on both of her federal claims. (Pl. Mem. in Supp. of Mot. for Collateral Estoppel 1, ECF No. 26.) The Court turns first to Cotterman's motion to dismiss and in particular, the threshold issue of personal jurisdiction.

## DISCUSSION

### I.     Cotterman's Motion to Dismiss

#### A.     Personal Jurisdiction

"A complaint need not include facts alleging personal jurisdiction. However, once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for

lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citations and alterations omitted). Where, as here, the parties rely solely on written materials, the plaintiff needs to establish only a *prima facie* case for personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Moreover, in resolving a Rule 12(b)(2) motion, the Court must "read the complaint liberally with every inference drawn in favor of plaintiff." *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009) (citations omitted); *see also Berger v. PIKR, Ltd.*, No. 14 C 8543, 2015 WL 2208200, at *2 (N.D. Ill. May 8, 2015).[3] The Court also must resolve any factual disputes in the plaintiff's favor, *N. Grain Mktg.*, 743 F.3d at 491; though, in this case, the facts material to personal jurisdiction are not in dispute.

Because no federal statute authorizes nationwide service of process in this suit, the Court may exercise personal jurisdiction over Cotterman, an out-of-state defendant, only to the extent that an Illinois court may do so. *See* Fed. R. Civ. P. 4(k)(1)(A).[4] The Illinois long-arm statute

---

[3] The plaintiff needs to go beyond the pleading and submit affirmative evidence only if the defendant files affidavits or other evidence in opposition to the exercise of personal jurisdiction. *See Purdue Research Found.*, 338 F.3d at 782-83. Cotterman did not submit any additional evidence, so Doe may rely on the allegations in the complaint to establish her case for personal jurisdiction.

[4] The Court notes that it has subject matter jurisdiction over the complaint on two bases. There is federal question jurisdiction under 28 U.S.C. § 1331 over the federal statutory claims and supplemental jurisdiction under 28 U.S.C. § 1367 over the state law causes of action. Supplemental jurisdiction applies because, as discussed below, the state law claims derive from the same nucleus of operative fact as the federal ones. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Alternatively, the Court has diversity jurisdiction over the entire complaint under 28 U.S.C. § 1332 as Cotterman is a citizen of California (more on that below), Doe is a citizen of Illinois, and the amount in controversy exceeds $75,000. Regardless of which heading applies, though, the Court must look to Illinois law to resolve the personal jurisdiction dispute here. Courts sitting in diversity must apply the law of the forum state to determine the scope of personal jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) ("A federal court sitting in diversity must rely on the law of personal jurisdiction that governs the

"permits its courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015) (citations omitted); 735 ILCS 5/2-209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."). Thus, Doe need only demonstrate that exercising personal jurisdiction over Cotterman in Illinois comports with the Due Process Clause. *Kipp*, 783 F.3d at 697 ("The parties have not argued, nor does Illinois law indicate, that the state's constitutional standards would differ from federal law in this case."); *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010) ("Because Illinois permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state statutory and federal constitutional requirements merge.") (citations omitted). The Due Process Clause authorizes personal jurisdiction over an out-of-state defendant when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

There are two types of contacts that may give rise to personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014). The Court need not address general jurisdiction, as Doe contends only that the Court has specific jurisdiction over her claims. (Pl.

courts of general jurisdiction in the state where the court is sitting.") Moreover, in federal question cases where there is no special federal rule for personal jurisdiction, the Court must look to forum state law as well. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citation omitted).

Resp. 3, ECF No. 23 ("Although personal jurisdiction can be general or specific, plaintiff claims only that this Court has specific jurisdiction over defendant.").) For a court to exercise specific jurisdiction, the litigation must "arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (internal quotation marks and alterations omitted) (citing *Daimler*, 134 S. Ct. at 754);[5] *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (The specific jurisdiction inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation.'") (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). At bottom then, specific personal jurisdiction is appropriate if "the defendant purposefully directs [his] activities at the forum state[,] the alleged injury arises out of those activities," *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010), and exercising personal jurisdiction "comports with traditional notions of fair play and substantial justice," *N. Grain Mktg.*, 743 F.3d at 492 (citation omitted).

### 1.     Minimum Contacts Analysis

The Court easily concludes that there is a sufficient connection between Cotterman, Illinois, and this litigation to give rise to personal jurisdiction over the entire complaint. As an initial matter, Cotterman does not contest jurisdiction over Doe's battery and IIED claims. And

---

[5] *Bristol-Myers* expressly applies to state courts and "leave[s] open the question of whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." 137 S. Ct. at 1784. Because the Court is looking to Illinois law to assess personal jurisdiction (see note 4), *Bristol-Myers* applies in this case. *See McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 4864910, at *4 n.7 (N.D. Ill. Oct. 26, 2017) (citing *Bristol-Myers* while exercising diversity jurisdiction and applying Illinois law).

for good reason: those claims are based on the allegation that Cotterman sexually abused Doe numerous times over a span of four years *in Illinois*. Rather, what Cotterman contests is the Court's ability to adjudicate Doe's two federal claims. (Def. Mot. ¶¶ 6-9, ECF No. 22.) The crux of the jurisdictional dispute is whether the injury Doe seeks to redress through her federal claims "arises out of" Cotterman's suit-related contacts with Illinois. Her federal claims are based on two statutes, 18 U.S.C. §§ 2255 and 2252A, that provide recovery to victims of certain enumerated child-pornography offenses, including 18 U.S.C. §§ 2251 and 2252, the crimes for which Cotterman was convicted. Doe's theory on those counts is that because she was featured in some of the pornography that formed the basis of Cotterman's convictions under 2251 and 2252, she is entitled to statutory damages as well as emotional damages stemming from being exploited by her grandfather in that pornography. To establish constitutionally minimum contacts between these claims and Illinois, Doe relies on the abuse she endured in the state between 2000 and 2004. (Pl. Resp. 2-4, ECF No. 23.) She emphasizes that Cotterman repeatedly traveled to Illinois to molest her over that time span, photographed and videotaped his abuse of her, and kept hundreds of pictures and dozens of videos of that abuse. Cotterman, on the other hand, argues that the alleged abuse in Illinois has nothing to do with his convictions. (Def. Mot. ¶¶ 5-6, ECF No. 22.) Rather, because he was convicted for crossing the border from Mexico into Arizona with child pornography, he suggests that Arizona is the only state that has enough contact with his offenses to exercise personal jurisdiction over Doe's federal claims for relief as a victim of that pornography.

The Court agrees with Doe that her injury on the federal claims arises out of the alleged abuse in Illinois. There is some debate about whether a defendant's contacts with the forum state must be an actual cause, a proximate cause, or both, to satisfy this prong. *See Felland v. Clifton*,

682 F.3d 665, 676 (7th Cir. 2012) (citing *Tamburo v. Dworkin*, 601 F.3d 693, 708-09 (7th Cir. 2010)). The Court need not resolve the dispute here as Cotterman's contacts with Illinois are "sufficient even under the strictest understanding of the 'arising out of' requirement." *Id.* at 677. Two allegations in the complaint are important for understanding why that is so. The first is that while Cotterman abused Doe in Illinois, he "further exploited" her "by photographing and videotaping the sexual abuse." (Compl. ¶ 11.) The second is that Cotterman's convictions were based in part on child pornography that featured Doe. (*Id.* ¶ 18.) Construing the complaint in a light most favorable to Doe, as it must at this stage, *see GCIU*, 565 F.3d at 1020 n.1, the complaint fairly alleges that the images and videos that Cotterman took of Doe while he abused her in Illinois were among those that formed the basis of his convictions. In other words, the Court must infer that without the Illinois-based abuse and recording of that abuse, Cotterman would not have been able to produce, possess, or transport some of the images he was caught with at the Arizona border. That is enough to establish a *prima facie* case that the Illinois-based abuse was not only an actual but also the legal cause of Doe's exploitation-related injury. *See Felland*, 682 F.3d at 674-77- (holding that although initial fraud occurred in Mexico, defendant's subsequent communications to forum state reassuring plaintiff about project were "central to the fraudulent course of conduct" at issue and thus sufficient to meet "strictest understanding" of arising under requirement); *Quarra Stone Co., LLC v. Yale Univ.*, No. 13-CV-790-SLC, 2014 WL 320059, at *7-10 (W.D. Wis. Jan. 29, 2014) (finding that even though alleged tortious interference may have been completed in another state, defendant's actions in forum state "constituted key component of" that tort and thus satisfied "the strictest application" of arising under standard); *see also Hyatt Int'l Corp.*, 302 F.3d at 716-17 (holding that defendant could not parse long course of business dealings into "two purportedly unrelated events" in determining

that his initial communications and visit with company in Illinois were related to claim that he was owed broker fee for hotel development in Italy).

From this point, the Court's conclusion that it may exercise specific jurisdiction quickly follows. Because Doe's federal claims sound in intentional tort, the Court looks to the *Calder* effects test to assess purposeful direction. *Tamburo*, 601 F.3d at 702. Under that test, the plaintiff must show "(1) intentional conduct (or 'intentionally and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* at 703 (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)). All three of those elements are met.[6] The alleged sexual abuse constitutes intentional and tortious conduct under Illinois law. *See generally W. States Ins. Co. v. Bobo*, 268 Ill. App. 3d 513, 644 N.E.2d 486 (5th Dist. 1994) (discussing intent to harm standard in context of childhood sexual abuse tort claims). Moreover, the abuse was expressly aimed at Illinois—it occurred in the state after Cotterman traveled there with the intent to commit the abuse—and Cotterman would have known that the effects of his abuse would be manifested in Illinois, where Doe lived at the time and still resides today. *See Felland*, 682 F.3d at 675 (discussing how defendants knew plaintiff was resident of forum state in finding that defendants purposefully directed allegedly tortious conduct at forum).

Exercising personal jurisdiction in Illinois also comports with traditional notices of fair play and substantial justice. The following factors are relevant to this determination: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in

---

[6] Citing *Doe v. Hesketh*, 15 F. Supp. 3d 586 (E.D. Pa. 2014), Cotterman argues that because there is no allegation that he ***transmitted*** any pornographic materials to Illinois, Doe cannot establish the purposeful direction requirement. (Mot. to Dismiss ¶¶ 7-9, ECF No. 22). But this argument ignores the fact that Doe alleges that Cotterman ***created*** some of the pornographic materials at issue ***in Illinois*** by abusing Doe in the state and recoding that abuse. On this basis alone, *Hesketh* is distinguishable.

obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 677 (quoting *Burger King*, 471 U.S. at 477.) Given that Doe's state law claims will proceed in this Court regardless, there is little added burden to Cotterman in litigating his federal claims in this forum. Moreover, "Illinois has a strong interest in providing a forum for its residents . . . to seek redress for torts suffered within the state and inflicted by out-of-state actors." *Tamburo*, 601 F.3d at 709. It is also far more convenient for Doe to seek redress in her home state and more efficient for a single forum to adjudicate this entire dispute. *See id.* at 710; *Felland*, 682 F.3d at 677. Although Doe in theory could bring her claims in other states—she alleges that Cotterman also abused her in California and Indiana—that another forum may also have personal jurisdiction over Cotterman relating to his course of conduct does not, of course, deprive Illinois courts of their own jurisdiction to hold Cotterman to answer Doe's claims. It is more reasonable in any event to conclude that Cotterman should anticipate being haled into court in Doe's home state rather than in California or Indiana, where none of the parties is currently located. *See Tamburo*, 601 F.3d at 709-10. Thus, the Court finds it may exercise personal jurisdiction over Cotterman with respect to Doe's federal claims.

## 2. Pendant Personal Jurisdiction

Even if the Court had determined that it lacked personal jurisdiction over the federal claims under the above analysis, it still would have allowed those claims to proceed on the basis of pendent personal jurisdiction. "Under the doctrine of pendent personal jurisdiction, a court may exercise its discretion to hear claims as to which personal jurisdiction may otherwise be lacking if those claims arise out of a common nucleus of facts with claims as to which personal jurisdiction exists." *Jackson v. N'Genuity Enters., Co.*, No. 09 C 6010, 2010 WL 3025015, at *6

(N.D. Ill. Aug. 2, 2010) (citation omitted); *see also* 4A Charles Alan Wright et al., *Federal Practice and Procedure* § 1069.7 (4th ed.). Essentially, "once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction." *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002) (citation omitted). The Seventh Circuit, like many of its sister circuits, has embraced the use of pendant party jurisdiction. *Robinson Eng'g Co., Ltd. Pension Plan & Trust v. George*, 223 F.3d 445, 449-50 (7th Cir. 2000); *Aviva Life & Annuity Co. v. Davis*, 20 F. Supp. 3d 694, 703 & n.7 (S.D. Iowa 2014) (noting that the Second, Third, Ninth, Tenth, Federal, and D.C. Circuits also have accepted use of pendant party jurisdiction).

To be sure, this case does not present the typical application of the doctrine.[7] Pendent personal jurisdiction most often is invoked in federal question cases where a federal statue authorizes nationwide process of service or there is supplemental subject matter jurisdiction over state law claims. *See, e.g.*, *Robinson Eng'g Co.*, 223 F.3d at 449-50 (illustrating both uses). Nonetheless, there is support in this circuit for applying the doctrine in diversity cases where the anchor claims are based purely on state law. In *Rice v. Nova Biomedical Corp.*, Judge Aspen invoked pendent personal jurisdiction over an employee's retaliation and defamation claims due to their relationship to a third, intentional inference claim. 763 F. Supp. 961, 966 (N.D. Ill. 1991), *aff'd*, 38 F.3d 909 (7th Cir. 1994), *cert. denied*, 514 U.S. 1111 (1995). He determined that, even though he was sitting in diversity and all three claims arose under state law, the doctrine applied with "equal, or perhaps greater, force" than in cases where personal jurisdiction was

---

[7] As discussed above (at note 4), if the Court lacked personal jurisdiction over the federal claims, it would have diversity jurisdiction over the state law claims. Thus, in this scenario, Doe's battery and IIED claims would be the anchor claims and her federal statutory claims would be the pendent claims.

predicated on a federal claim that provided for extra-territorial service of process. *Id.* (discussing *Robinson v. Penn Cent. Co.*, 484 F.2d 553, 554-56 (3d Cir. 1973)). In so holding, Judge Aspen reasoned that "[s]ince the first two counts are substantially interrelated to [the third]" and the defendant was already properly before the court on the third count, the defendant "loses nothing by being subject to [the court's] judgment on the other two counts." *Id.*; *see also Jackson*, 2010 WL 3025015, at *6 (applying doctrine to support personal jurisdiction over several state law claims that arose under same nucleus of facts as state law conspiracy claim). Several district courts in other circuits have hewed to this approach as well. *See, e.g., Miller v. Native Link Const., LLC*, No. 15-1605, 2017 WL 3536175, at *29 (W.D. Pa. Aug. 17, 2017) (invoking pendent personal jurisdiction over fraud claims that arose out of same nucleus of operative fact as several other state law claims because doing so did not "unduly inconvenience" defendants, who were already subject to personal jurisdiction on other counts, and prevented "piecemeal litigation" against defendants); *General Elect. Capital Corp. v. Mackzilla, LLC*, No. H-15-2425, 2016 WL 1059529, at *6-7 (S.D. Tex. 2016) (exercising pendent jurisdiction over contract claims that stemmed from the "same course of dealing" as other state law claims because doing so did not "severely inconvenience[ ]" defendants, who were already defending the other claims, and because it would be "more logical and more efficient" for all the claims to be tried together).

The federal claims in this case clearly arise out of the same nucleus of operative fact as the state law claims. As discussed above, all four claims stem directly from Cotterman's alleged abuse of Doe in Illinois. It is therefore appropriate for the Court to exercise pendent personal jurisdiction over the federal causes of action. The Court's ruling does not add any additional burden on Cotterman, who is otherwise properly subject to the Court's jurisdiction on the state-law claims. Moreover, exercising pendent personal jurisdiction will eliminate the need for Doe to

file a second suit in another state, thereby promoting judicial economy and the efficient use of resources by the parties. The Court thus finds that it has personal jurisdiction over the entire complaint and Cotterman's motion to dismiss pursuant to Rule 12(b)(2) is denied.

### B. Statute of Limitations

Cotterman also raises a question in his motion about the timeliness of the battery and IIED claims. Although Cotterman's motion invokes only Rule 12(b)(2), his statute of limitations argument falls under Rule 12(b)(6). To overcome a Rule 12(b)(6) motion, "a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This Court "must accept as true all factual allegations in the . . . complaint and draw all permissible inferences" in Doe's favor. *Id.* (quoting *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (internal quotation marks omitted)).

The parties agree that the timeliness of the battery and IIED claims is governed by 735 ILCS 5/13-202.2(b), the Illinois statute of limitations that applies to any "action for damages for personal injury based on childhood sexual abuse." They disagree, however, on what version of the statute controls. Cotterman contends, by citing *Doe v. Carlson*, 2017 IL App (1st) 160536, ¶¶ 14-19, 71 N.E.3d 806, 809-10, that the version of the statute that was in effect between 1994 and 2003 applies (the "1994 version"). (Def. Mot. ¶ 10, ECF No. 22.) In relevant part, that version provides that a victim of childhood sexual abuse has two years from the time she turns 18 years old to commence an action for damages. 735 ILCS 5/13-202.2(b), (d) (amended 2003).

Doe urges the Court to apply the current version of the statute, (Pl. Resp. 8-9, ECF No. 23), under which, she has 20 years from her eighteen birthday to assert her claims, 735 ILCS 5/13-202.2 (b), (d) (2018). Because Doe filed this suit shortly after she turned 20 years old, (Compl. ¶¶ 1, 7), her claims are timely under the current version of the statute, but untimely under the 1994 version.

The Court rejects Cotterman's arguments for two reasons. The first is that he utterly fails to explain why the 1994 version of the statute applies in this case. *See Massuda v. Panda Exp., Inc.*, 759 F.3d 779, 783-84 (7th Cir. 2014) (stating that "perfunctory and undeveloped arguments . . . are waived"). Cotterman points to *Carlson* for an explanation, but that case is inapposite; it dealt with a victim who was sexually abused between 1996 and 1999 (when she was between the ages of 17 to 20) and who brought suit in 2013—at age 34. 2017 IL App (1st) 160536, ¶¶ 3-10, 71 N.E.3d at 807-08. Stated differently, the case involved a situation where the plaintiff's claim had run under the 1994 version of the statute; thus, the victim could not rely on later amendments to restore her claim. *See Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 410-11, 917 N.E.2d 475, 485-86 (2009) (finding that 2003 amendment to statute of limitations could not apply retroactively to revive plaintiff's claims, which was already time-barred under prior version of statute); *M.E.H. v. L.H.*, 177 Ill. 2d 207, 218-19, 685 N.E.2d 335, 340-41 (1997) (finding that earlier repeal of 12-year repose period under statute could not, consistent with due process, operate to revive claims of childhood sexual abuse, if claims were time-barred under older version of statute). Here, however, Doe had not yet turned eighteen when the 1994 version was in effect, so neither *Carlson* nor that version of the statute has any bearing on this litigation.

That brings the Court to its second point: the current statute expressly provides that Doe may take refuge under the 20-year limitations period. In relevant part, the statute states:

> The changes made by this amendatory Act of the 96th General Assembly apply to actions commenced on or after the effective date of this amendatory Act of the 96th General Assembly if the action would not have been time barred under any statute of limitations or statute of repose prior to the effective date of this amendatory Act of the 96th General Assembly.

735 ILCS 5/13-202.2(e). The "amendatory Act of the 96th General Assembly" refers to Public Act 96-1093, through which, the Illinois Legislature increased the limitations period from 10 to 20 years. 2010 Ill. Legis. Serv. P.A. 96-1093 (H.B. 6124) (West). The effective date of that amendment was January 1, 2011. *Id.* Because Doe had not yet turned 18 years old when the 2011 version of the law came in effect (and thus her childhood sexual abuse claims were not time-barred at that point), her claims are therefore governed by the current 20-year limit. As a result, the battery and IIED claims were timely filed and the Court denies Cotterman's motion to dismiss those claims.

## C.     Motion to Transfer

In a last-ditch effort, Cotterman argues that if dismissal is not warranted, the Court should transfer the case to the United States District Court for the District of Oregon under the doctrine of *forum non conveniens*. (Def. Mot. ¶¶ 11-12, ECF No. 22.) Cotterman contends that his current incarceration "renders it impossible for him to adequately defend this case in Illinois" and that a transfer is necessary to accommodate his custodial limitations. (*Id.* ¶ 11.) This argument, too, is baseless. Save for a few rare exceptions that are inapplicable here, the modern version of the *forum non conveniens* doctrine applies "only in cases where the alternative forum is abroad." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994)).[8] The doctrine, as applicable within the

---

[8] The doctrine also calls for a dismissal, not transfer. *See Sinochem*, 549 U.S. at 429-30.

federal court system, has been codified by Congress; transfers for convenience between federal district courts are governed now by 28 U.S.C. § 1404(a).

But section 1404(a) is of no help to Cotterman either. The statute provides that a district court may transfer a suit to another district only if venue is proper in both districts and the transfer serves the convenience of the parties and witnesses as well as the interests of justice. 28 U.S.C. § 1404(a); *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) ("Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice."). Cotterman has not, and cannot, show that venue is proper in Oregon. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986) (stating that moving party bears the burden of establishing transfer).

The only plausible basis for venue in Oregon is that Cotterman currently is incarcerated there. (Def. Mot. ¶ 11, ECF No. 22.) While it is true that venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," 28 U.S.C. § 1391(b), Cotterman is not an Oregon resident. In the context of venue, a natural person is a resident of "the judicial district in which that person is domiciled." *Id.* § 1391(c). In turn, "establishing domicile in a particular state requires physical presence while intending to remain there." *Sheneman v. Jones*, 682 F. App'x 498, 499 (7th Cir. 2017) (citations omitted). Because domicile is a "voluntary status," however, "a forcible change in a person's state of residence does not alter his domicile; hence the domicile of [a] prisoner before he was imprisoned is presumed to remain his domicile while he is in prison." *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996) (quoting *Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir. 1991)). Cotterman represents that he was domiciled in California before he was incarcerated. (Def. Mot. ¶¶ 9, 12(c), ECF No. 22.) And rather than rebut the presumption that he remains domiciled in

California while in prison, Cotterman confirms as much. *See id.* ¶ 12(c) ("Defendant's domicile is Truckee, California where he resided for at least a score of years prior to 2007.") Accordingly, because Cotterman cannot show he is domiciled in Oregon, he cannot establish that venue is proper in the District of Oregon under section 1404(a). His request for a transfer is thus denied.

## II.     Motion for Collateral Estoppel

Having dispatched Cotterman's motion to dismiss, the Court turns to Doe's motion for collateral estoppel. Collateral estoppel, which is more commonly known now as issue preclusion, dictates that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Carter v. C.I.R.*, 746 F.3d 318, 321 (7th Cir. 2014) (quoting *Montano v. United States*, 440 U.S. 147, 153 (1979)). By preventing parties "from contesting matters that they have had a full and fair opportunity to litigate," the doctrine "protects their adversaries from the expense and vexation attending multiple lawsuits, converses judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana*, 440 U.S. at 153-54.

Doe seeks to preclude in this suit issues litigated in Cotterman's criminal case. Before the Court can analyze whether issue preclusion applies, it must first determine what body of law governs the doctrine's application. Doe believes that Illinois law dictates the preclusive effect of Cotterman's convictions, (Pl. Mem. 4, ECF No. 26 (citing *Am. Family Mut. Ins. Co. v. Savickas*, 193 Ill.2d 378, 388-89, 739 N.E.2d 445, 451 (2000)), while Cotterman relies on federal common law, (Def. Resp. to Mot. for Collateral Estoppel 4, ECF No. 29) (citing *Shacket v. Philko Aviation, Inc.*, 590 F. Supp. 664, 667 (N.D. Ill. 1984)). Although neither party explains how they reached their respective conclusions, Cotterman is correct. The prior criminal proceeding was

federal—Cotterman was convicted following a bench trial in the District of Arizona—so this Court must apply federal preclusion law. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law."); *Scherer v. Balkema*, 840 F.2d 437, 442-43 (7th Cir. 1988) (applying federal common law to determine preclusive effect of prior federal proceedings in federal question case); *United States v. Saurez*, No. 07-CV-6431, 2010 WL 3418281, at *3 (N.D. Ill. Aug. 27, 2010) (determining preclusive effect of prior criminal conviction in federal question suit under federal common law).

Under federal common law, issue preclusion applies when four requirements are met: (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue was actually litigated in the prior litigation; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked had a full and fair opportunity to litigate the issue in the prior litigation.[9] *Adams*, 742 F.3d at 736; *Carter*, 746 F.3d

---

[9] The Seventh Circuit has at times articulated different standards for the fourth prong. *Compare Scherer*, 840 F.2d at 442 (stating that the party against whom the doctrine is invoked need only have been "a party to the earlier proceeding") (citing *Kunzelman v. Thompson*, 799 F.2d 1172, 1176 (7th Cir. 1986)), *with Adams*, 742 F.3d at 736 (stating that party must have been "fully represented" in prior action) (citing *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011)), *and Carter*, 746 F.3d at 321 (stating that non-moving party must have had "full and fair opportunity" to litigate issue in the prior suit) (citing *DeGuellee v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013)). Although the "fully represented" language appears to be the most commonly cited within the circuit, *see Sec. & Exch. Comm'n v. Durham*, No. 1:11-CV-370-JMS-TAB, 2017 WL 3581640, at *5 n.5 (S.D. Ind. Aug. 18, 2017) ("Since 1986, the rule set forth in *Klingmen* [which includes the "fully represented" language] has been cited within the Seventh Circuit nearly 200 times, becoming the prevailing test for collateral estoppel within this circuit."), this Court utilizes the "full and fair opportunity" language for two reasons. First, the Court sees no meaningful distinction between it and the "fully represented" language, as evidenced by the Seventh Circuit's recent use of both formulations. *Adams*, 742 F.3d at 736; *Carter*, 746 F.3d at 321. Second, the "full and fair opportunity" requirement tracks language used by the Supreme Court, *see Montana*, 440 U.S. at 153-54 (stating that collateral estoppel seeks "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate"), and reflects the underlying purpose of issue preclusion, *see Scherer*, 840 F.2d at 442 (quoting *Bowen v. United States*, 570 F.2d 1311, 1322 (7th Cir. 1978)) ("The policy underlying the doctrine is that 'one fair opportunity to litigate an issue is enough.'").

at 321; *Kluppelberg v. Burge*, 276 F. Supp. 3d 773, 776 (N.D. Ill. 2017); *Swanson v. Baker & McKenzie, LLP*, No. 16 C 7890, 2016 WL 7231610, at *3 (N.D. Ill. Dec. 14, 2016). Moreover, a prior criminal conviction may be used offensively to preclude relitigation of issues in a civil case in which the criminal defendant is a party. *Instituto Nacional De Comercializacion Agricola (Indeca) v. Cont'l Ill. Nat'l Bank & Trust Co.*, 858 F.2d 1264, 1271 (7th Cir.1988) ("[I]n this circuit issues actually litigated for purposes of a criminal conviction conclusively establish those issues for later federal civil litigation.") (citing *Nathan v. Tenna Corp.*, 560 F.2d 761, 763 (7th Cir. 1977)); *Appley v. West*, 832 F.2d 1021, 1025-26 (7th Cir. 1987) (finding that collateral estoppel "may be applied in civil trials to issues previously determine in a criminal conviction").

Doe believes that Cotterman's convictions establish his liability on both Count I and Count II. Count I is brought under a federal statute, 18 U.S.C. § 2255, commonly known as Masha's law, that affords a civil remedy for personal injuries caused by the sexual exploitation of children. In relevant part, the statute provides that a plaintiff may recover damages and reasonable attorney's fees if, "while a minor," she "was a victim of a violation of [18 U.S.C. §§ 2251 or 2252] and "suffer[ed] personal injury as a result of such violation[s]." 18 U.S.C. § 2255.[10] Doe contends that, because Cotterman was found guilty of violating sections 2251 and 2252 and it was established during his criminal trial that she was featured in the child pornography that formed the basis of those convictions, this Court may resolve the issue of liability under Count I without further proof.

The Court agrees with Doe, but only half way. There is no question that Cotterman is precluded from relitigating his convictions. His violation of sections 2251 and 2252 was actually litigated in his criminal case and formed the basis of the judgement entered against him in the

---

[10] The statute adds that any person who is a victim of such violations "shall be deemed to have sustained damages of no less than $150,000 in value." 18 U.S.C. § 2255.

District of Arizona. (*See* Criminal Trial Minutes, *United States v. Cotterman*, No. 07-CR-1207-RCC-CRP (D. Ariz. June 10-11, 2014), ECF Nos. 126, 128; Amended Judgement in Criminal Case, *United States v. Cotterman*, No. 07-CR-1207-RCC-CRP (D. Ariz. Oct. 10, 2014), ECF No. 151.) Cotterman also had a full and fair opportunity to challenge those convictions; he not only appealed his judgment, *Cotterman*, 619 F. App'x at 655, but also vigorously challenged the admission of the pornographic materials that led to his conviction, *Cotterman*, 709 F.3d at 959.

Cotterman counters that his convictions are not subject to collateral estoppel for two reasons. He first argues that the convictions are not a final judgment, as required under the doctrine, because he has not yet exhausted his habeas remedies. (Def. Resp. 3, ECF No. 29.) But this argument falls flat. Cotterman's appeal, let alone his habeas petition, does not affect the finality of his criminal judgment for purposes of issue preclusion. *See Bradley v. United States*, 410 U.S. 605, 609 (1973) ("Final judgment in a criminal case means sentence. The sentence is the judgment.") (citation omitted); *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007) (finding that "the fact that an appeal was lodged does not defeat the finality of the judgment" for purposes of preclusion) (citations omitted); *Durham*, 2017 WL 3581640, at *6-7 ("If a direct appeal is no bar to collateral estoppel, it logically follows that a § 2255 Motion is also not a bar to collateral estoppel."); *Sec. and Exch. Comm'n v. Black*, No. 04 C 7377, 2008 WL 4394891, at *1 n.1 (N.D. Ill. Sept. 24, 2008) ("Even if [the defendant] seeks *certiorari* and the Supreme Court grants it, the collateral estoppel effect of the criminal judgment is not affected by a pending appeal.") (citations omitted). Cotterman also contends that the doctrine is inapplicable because he did not testify at his criminal trial, (Def. Resp. 3, ECF No. 29), but this argument is no more convincing. What matters for purposes of collateral estoppel is that the non-moving party had the ***opportunity*** to litigate the issue in the prior proceeding.

Cotterman does not claim that he was precluded from testifying, so the fact that he did not take the stand at his criminal trial does not alter the preclusion analysis here.[11] *Cf. Swanson*, 2016 WL 7231610, at *3 (stating that non-movant did not argue that she was precluded from litigating claim or deprived of due process in prior lawsuit in applying collateral estoppel). Cotterman's prior convictions thus may be used to establish a violation of a predicate offense under Count I.

Where the Court parts ways with Doe (at least for the time being), is her contention that the convictions conclusively show she was a victim of Cotterman's sexual exploitation. While the complaint alleges that Doe was a victim and was depicted in photos and videos found in Cotterman's possession when he was arrested, Doe offers no evidence, by way of an affidavit or otherwise, that she was featured in the pornography at issue in Cotterman's criminal trial. Rather, she directs the Court's attention to the Arizona district court's docket. While the Court may take notice of filings in that proceeding, *see Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (permitting judicial notice of public court records in deciding Rule 12(b)(6) motions), the docket is unhelpful in resolving this issue. For starters, the names of the victims in the criminal docket are anonymized, as is Doe's name in this case, so the Court has no way to connect the two. Furthermore, the transcripts of Cotterman's bench trial are not publicly available and nothing in the pre-trial stipulations references Doe. (Agreements Between Gov't and Def., *United States v. Cotterman*, No. 07-CR-1207-RCC-CRP (D. Ariz. June 9, 2014), ECF No. 121.)

---

[11] Cotterman also argues that collateral estoppel does not apply because he never had an opportunity in his criminal case to litigate the issue of Doe's personal injuries. (Def. Resp. 6, ECF No. 29.) But this argument misconstrues the doctrine. The doctrine serves to bar the relitigation of specific ***issues***, which may or may not resolve entire claims. Thus, for example, Doe may use the doctrine to preclude litigation of certain elements of liability (but not others), or to resolve the issue of liability completely for a cause of action (but not damages). *See, e.g.*, *Plaintiff B v. Francis*, No. 08-CV-79/RS-AK, 2010 WL 497375, at *4-5 (N.D. Fla. Feb. 5, 2010) (granting summary judgment as to violation 18 U.S.C. § 2252(a)(3)(B) on the basis of defendant's prior guilty plea, but noting damages under 18 U.S.C. § 2255 are reserved for jury).

The Court therefore has no basis to conclude, from the records publically available, that Doe was a "victim" under 18 U.S.C. § 2255. The Court will not preclude Doe from reasserting her issue preclusion argument by means of a summary judgment motion, but she will have to adduce evidence that shows that there is no material dispute of fact concerning her status as a victim of the conduct for which Cotterman was convicted.

Doe also seeks to preclude litigation of Cotterman's liability under Count II. This cause of action is brought under 18 U.S.C. § 2252A, which proscribes certain activities relating to child pornography. Akin to Masha's law, subsection (f) of the statute provides a civil remedy to "[a]ny person aggrieved by reason of the conduct prohibited under [18 U.S.C. § 2252A]," including damages and attorney's fees. 18 U.S.C. § 2252A(f). To begin with, Doe's preclusion claim as to Count II also fails because she has as yet made no evidentiary showing that she was a victim of Cotterman's conduct. But the application of collateral estoppel to this count faces another obstacle as well: Cotterman was not convicted under 2252A; there is no criminal conviction serving as evidence that Cotterman committed the conduct prohibited under that statute.

Doe seeks to overcome this hurdle by equating a conviction under section 2252 with a violation of 2252A. While there is significant overlap between the two provisions, *see* Christina M. Copsey, *How Many Is "Any"?: Interpreting § 2252A's Unit of Prosecution for Child Pornography Possession*, 62 Am. U. L. Rev. 1675, 1678 (2013) ("Section 2252A is almost a mirror image of an older statute that is still in effect and targets only *actual* [as opposed to virtual] child pornography: § 2252."), Doe makes no effort to show how Cotterman's convictions under 2252 line up with any of the myriad prohibitions in 2252A. By failing to do so, she has deprived Cotterman of the opportunity to contest whether there are any meaningful differences between the two. The Court declines to consider whether the provisions are equivalent for

preclusion purposes until Doe identifies the relevant parts of 2252A and explains how they overlap with Cotterman's prior convictions. *See Dal Pozzo v. Basic Mach. Co., Inc.*, 463 F.3d 609, 613 (7th Cir. 2006) ("An advocate's job is to make it easy for the court to rule in [her] client's favor [.]").

*     *     *

For the reason stated above, Cotterman's motion to dismiss is denied. The Court has personal jurisdiction over Cotterman on the basis of his suit-related conduct and there is no question that Doe's state law claims were timely filed. Cotterman's alternative request for a transfer to a district court in Oregon is also denied due to a lack of venue in that state. The Court grants in part and denies in part Doe's motion for collateral estoppel. Cotterman is precluded from relitigating whether he violated 18 U.S.C. §§ 2251 and 2252, which are predicate offense for purposes of Count I. However, Cotterman is not barred at this stage from litigating any other issues or statutory elements. To the extent that Doe's motion is denied, that denial is without prejudice. Doe may refile her motion for collateral estoppel at any time up to and including her deadline to file summary judgment, but should address the deficiencies discussed in this opinion if she elects to do so.

Date: March 9, 2018

John J. Tharp, Jr.
United States District Judge

23